## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

IN RE: JASON L. EVANSINGSTON,                             Case No. 2:19-bk-11034J
                                                                                           (Chapter 12)
          Debtor.

### MEMORANDUM OPINION AND ORDER DISMISSING CASE
### WITH BAR TO REFILING FOR 177 DAYS

Before the Court is the *Motion to Dismiss Chapter 12 Bankruptcy* (the "**Motion**") (Doc. No. 14) filed April 5, 2019, on behalf of Standard Mortgage Corporation ("**SMC**"). This is the second Chapter 12 bankruptcy case filed by Jason L. Evansingston (the "**Debtor**"). The Debtor voluntarily dismissed his first case just three days prior to filing this second case. In the Motion, SMC argues two grounds for dismissal, both based on the Debtor's eligibility to be a debtor. First, SMC asserts that the Debtor is not eligible to be a debtor in a Chapter 12 case because he does not qualify as a "family farmer." Second, SMC asserts that the Debtor is not eligible to be a debtor under any chapter of the Bankruptcy Code because the Debtor requested and obtained the voluntary dismissal of his first bankruptcy case following the filing of a request for relief from the automatic stay, and this second case was filed prior to the 180-day bar to refiling.

The Motion was set for hearing on May 9, 2019. When the matter was called, the parties announced that the Motion would be granted. After SMC's counsel drafted the order, however, the parties realized that while the Debtor intended to agree to the dismissal of this second case based on his ineligibility as a family farmer, he did not intend to agree that he was ineligible to be a debtor under any chapter of the Bankruptcy Code for a period of 180 days following the voluntary dismissal of his first case. Because the latter ground for dismissal would result in a

180-day bar to refiling, the Court reset the Motion for hearing and heard the matter on May 21, 2019.

At the May 21, 2019 hearing, SMC appeared by and through its counsel, Lax, Vaughan, Fortson, Rowe & Threet, P.A., by Branch T. Fields. The Debtor appeared in person and by and through his counsel, Caddell Reynolds Law Firm, by Oswald C. "Rusty" Sparks. After hearing the testimony of the Debtor and receiving the parties' documentary evidence, the Court took the matter under advisement. For the reasons stated below, SMC's Motion is granted as to both grounds sought for dismissal.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

## II. Findings of Fact

The parties do not dispute the background facts. SMC is the holder of a note executed by the Debtor on October 21, 2013, and secured by a deed of trust executed by the Debtor and Ms. Tenika L. Evansingston on real property located at 12401 Kanis Road, Unit D, Little Rock, Arkansas 72211 (the "**Kanis Road Property**"). (SMC Ex. 1). The Debtor defaulted on payments due under the note and SMC initiated a statutory foreclosure proceeding in the summer of 2017. (SMC Ex. 31). A statutory foreclosure sale was scheduled for September 27, 2017. (SMC Ex. 31). Two days before the sale was to take place, the Debtor filed a voluntary petition

for relief under the provisions of Chapter 12 of the United States Bankruptcy Code, which was assigned Case No. 4:17-bk-15218 (the "**First Case**"). (SMC Ex. 14).

On March 21, 2018, about six months after the First Case was filed, SMC filed a motion for relief from stay alleging unreasonable delay by the Debtor that was prejudicial to creditors, failure to timely file a plan,[1] and failure to make payments to SMC. (SMC Ex. 8). SMC also alleged that it had to advance funds for payment of taxes and insurance because of the Debtor's nonpayment under the note. (SMC Ex. 8).

The motion for relief from stay was set for hearing on April 12, 2018, but when the case was called, the parties announced that the matter had been settled. On May 1, 2018, the Court entered the parties' agreed order, which required the Debtor to make certain monthly and quarterly payments to the Chapter 12 Trustee to be paid to SMC as regular monthly payments and quarterly adequate protection payments. The agreed order also provided that if the Debtor failed to make the payments as stated in the agreed order, SMC would be entitled to file "a motion and submit an *ex parte* order granting relief from stay" as to the Kanis Road Property. (SMC Ex. 9).

On February 4, 2019, SMC filed a motion for *ex parte* relief from stay, alleging that the Debtor had failed to comply with the agreed order by failing to make monthly payments to the Chapter 12 Trustee in December 2018 and January 2019 and failing to make any quarterly payments to the Chapter 12 Trustee.[2] (SMC Ex. 10). The motion for *ex parte* relief was supported by an affidavit of an employee and agent of SMC. (SMC Ex. 10). On February 6,

---

[1] The Chapter 12 Plan was to be filed by December 26, 2017. 11 U.S.C. § 1221 (2012) (plan due "not later than 90 days after the order for relief under this chapter").

[2] Pursuant to the agreed order, the Debtor was to make the first monthly payment in April 2018 and the first quarterly payment in June 2018. (SMC Ex. 9).

3

2019, an order was entered by the Court granting SMC *ex parte* relief from stay as to the Kanis Road Property to allow SMC to pursue its state law remedies. (SMC Ex. 11).

SMC again elected to pursue a statutory foreclosure proceeding and filed *a Notice of Default and Intention to Sell* in the real estate records of Pulaski County, Arkansas, on February 20, 2019. (SMC Ex. 32). The notice stated that a foreclosure sale would be held on May 8, 2019. (SMC Ex. 32).

On the same date that the notice was filed, February 20, 2019, the Debtor filed a motion requesting that his Chapter 12 bankruptcy case be dismissed, and on February 22, 2019, an order was entered granting the Debtor's motion and dismissing his case. (SMC Exs. 12–13).

Three days after the First Case was dismissed, the Debtor filed this Chapter 12 bankruptcy case, Case No. 2:19-bk-11034 (the "**Second Case**").

### III. Arguments

SMC seeks dismissal of the Debtor's Second Case for cause under Section 1208(c) of the Bankruptcy Code because the Debtor is not eligible to be a debtor in a Chapter 12 case and was barred from refiling bankruptcy under any chapter pursuant to Section 109(g)(2) of the Bankruptcy Code.

As to the first ground, ineligibility to be a debtor in a Chapter 12 case, SMC argues that the Debtor does not meet the income requirements of a "family farmer." To qualify, the family farmer must receive from his farming operation "more than 50 percent of [his] gross income for– (i) the taxable year preceding; or (ii) each of the 2d and 3d taxable years preceding the taxable year in which the case concerning such individual . . . was filed." 11 U.S.C. § 101(18)(A) (2012). The Debtor admits he does not meet the income requirements to qualify as a family farmer and the evidence introduced at the hearing supports this conclusion. Based on the

4

Debtor's admission, this issue does not warrant further discussion by the Court. The Motion will be granted on the ground that the Debtor is ineligible to be a debtor under Chapter 12 of the Bankruptcy Code. Dismissal on this ground does not, however, fully resolve SMC's Motion.

As to the second ground, SMC argues the Debtor voluntarily dismissed the First Case "following the filing" of SMC's relief from stay motion, and, pursuant to Section 109(g)(2), the Debtor was barred from filing bankruptcy under any chapter of the Bankruptcy Code for a period of 180 days. It further argues the Debtor's conduct in the First Case and in filing the Second Case is the exact type of abuse Congress sought to address by enacting Section 109(g)(2).

The Debtor argues that the Court should follow the holding in *Economy Motors, Inc. v. Jones (In re Jones)*, 99 B.R. 412 (Bankr. E.D. Ark. 1989), and deny SMC's Motion because SMC's motion for relief was not "pending" at the time the First Case was voluntarily dismissed.

For the reasons discussed below, the Court finds that the Debtor's filing of his Second Case was barred by Section 109(g)(2).

### IV. Discussion

The Debtor has the burden of proving his eligibility to file bankruptcy. *Montgomery v. Ryan (In re Montgomery)*, 37 F.3d 413, 415 (8th Cir. 1994) (citing *Tim Wargo & Sons, Inc. v. Equitable Assurance Soc'y of the U.S. (In re Tim Wargo & Sons, Inc.)*, 869 F.2d 1128, 1130 (8th Cir. 1989)). Section 109(g)(2) provides:

> [N]o individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if
>
> . . . .
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2) (2012).

5

The prohibition for filing bankruptcy based on a debtor's voluntary dismissal of a prior case following the filing of a motion for relief from stay was added to the Bankruptcy Code in 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.[3] The policy considerations for enacting the statute included "'curb[ing] abuses of the bankruptcy code and mak[ing] its use truly a last resort.'" *In re Montgomery*, 37 F.3d at 416 (quoting 130 CONG. REC. 8894, *reprinted in* 1984 U.S.C.C.A.N. 576, 590, 598 (statement of Sen. Hatch)).

The language of Section 109(g)(2) has been discussed in numerous cases and the interpretation of Section 109(g)(2) has created at least four different readings of the statute. The four interpretations are generally referred to as: (1) the mandatory approach; (2) the discretionary or equitable approach; (3) the pending motion approach; and (4) the causal connection approach. *In re Richter*, No. 10-01260, 2010 WL 4272915, at *2 (Bankr. N.D. Iowa Oct. 22, 2010) (citing Ned W. Waxman, *Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2)*, 48 ARIZ. L. REV. 149 (2006)). Each will be described briefly below.

The Mandatory Approach. Courts following the mandatory approach find the language of the statute unambiguous and a clear command by Congress to bar refiling any time a debtor voluntarily dismisses his case following the filing of a motion for relief from stay. *See In re Keziah*, 46 B.R. 551, 554 (Bankr. W.D.N.C. 1985) (adopting mandatory approach and declining debtor's request to apply the statute "only where the filing was abusive"). This approach does not require a relationship between the voluntary dismissal and the filing of the motion for relief. As stated by the court in *Keziah*, had Congress wanted the courts to use their discretion in applying the provision, it could have located the statute in another section of the Bankruptcy

---

[3] Pub. L. No. 98-353, 98 Stat. 333 (codified as amended in scattered sections of 28 U.S.C. and 11 U.S.C.). This provision was originally added to the Bankruptcy Code as Section 109(f)(2), but was later redesignated as Section 109(g)(2) by the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, 100 Stat. 3088 (codified as amended in scattered sections of 28 U.S.C. and 11 U.S.C.).

6

Code where the court has discretion, such as Section 707, 1112, or 1325, rather than in Section 109, which the *Keziah* court described as involving subject matter jurisdiction. *In re Keziah*, 46 B.R. at 554. *Contra In re Montgomery*, 37 F.3d at 415 n.5 (holding "Section 109 determines eligibility for bankruptcy relief, not jurisdiction").

Many courts have disagreed with this approach. *See, e.g., Home Sav. of Am., F.A. v. Luna (In re Luna)*, 122 B.R. 575, 577 (B.A.P. 9th Cir. 1991) (finding a "[m]echanical application" would produce "an illogical and unjust result"); *In re Sole*, 233 B.R. 347, 349 (Bankr. E.D. Va. 1998) (disagreeing with the mandatory approach "to the extent that it does not read the words 'following the filing' as necessitating some casual [sic] connection between the filing of a motion for relief and the subsequent voluntary dismissal").

The Discretionary or Equitable Approach.  Courts following the discretionary or equitable approach consider the specific facts of the case to determine if the type of abuse Congress intended to alleviate in enacting the statute is present or if strict application of the statute would lead to results that are illogical, unjust, or absurd. *See In re Luna*, 122 B.R. at 577 (affirming bankruptcy court's use of discretion where "[m]echanical application" of Section 109(g)(2) would reward creditor for acting in bad faith and punish debtor for acting in good faith producing "an illogical and unjust result"); *In re Santana*, 110 B.R. 819, 821–22 (Bankr. W.D. Mich. 1990) (denying motion to dismiss although voluntary dismissal was requested and obtained after motion for relief filed where creditor seeking dismissal was not creditor that sought relief from stay in prior bankruptcy).[4]  The court in the *Sole* case criticized the *Luna* and *Santana* courts for reaching "beyond their judicial roles to achieve a desired result." *In re Sole*, 233 B.R. at 349.

---

[4] The *Santana* case has also been cited as an example of a case using the causal connection approach. *See First Nat'l Bank of Rocky Mount v. Duncan (In re Duncan)*, 182 B.R. 156, 158 (Bankr. W.D. Va. 1995).

The Pending Motion Approach.  Courts following the pending motion approach require exactly what the name implies—that a motion for relief from stay be pending or unresolved at the time the first bankruptcy case is voluntarily dismissed.  *In re Jones*, 99 B.R. at 413 ("Section 109(g)(2) applies only if there is a contested matter pending at the time of the voluntary dismissal.").  As noted by the court in the *Richter* case, under this approach, if the motion for relief "has been withdrawn, dismissed, granted, denied, or settled when the debtor requests and obtains dismissal of the case, § 109(g)(2) does not apply."  *In re Richter*, 2010 WL 4272915, at *3.

The *Jones* case has been cited not only as adopting the pending motion approach but also as adopting the discretionary or equitable approach.  *Compare In re Richter*, 2010 WL 4272915, at *3 (pending motion approach), *with In re Luna*, 122 B.R. at 577 (discretionary approach), *and In re Copman*, 161 B.R. 821, 823 (Bankr. E.D. Mo. 1993) (discretionary approach).  It has also been cited as "reading an exception into [S]ection 109(g)(2)."  *Moran v. Frisard (In re Ulmer)*, 19 F.3d 234, 237 (5th Cir. 1994).  Indeed, there being no connection between the motion for relief from stay that was *denied* fifteen months earlier and the debtor's voluntary dismissal, the court's holding in *Jones* could also be construed as an application of the causal connection approach.

The Causal Connection Approach.  Courts adopting the causal connection approach "look for a causal connection between a motion for relief from the automatic stay and a debtor's subsequent request and receipt of a voluntary dismissal."  *In re Sole*, 233 B.R. at 350.  If such a causal connection is not found, the 180-day bar is not triggered.  *Id.*; *see also First Nat'l Bank of Rocky Mount v. Duncan (In re Duncan)*, 182 B.R. 156, 159 (Bankr. W.D. Va. 1995) (holding debtor's voluntary dismissal must be in response to the motion for relief from stay filing); *In re*

8

*Copman*, 161 B.R. at 824 (finding dismissal inappropriate where there was "no connection" between the dismissal of the first case and the request for relief from stay).

Courts following this approach find that a causal connection is required by the plain language of the statute. *See In re Sole*, 233 B.R. at 348 (the causal connection approach "applies the plain meaning of the statute"); *In re Duncan*, 182 B.R. at 159 ("a natural and common understanding of the word 'following' includes a suggestion that there is some causal relationship between the thing coming before and the thing coming after."); *In re Copman*, 161 B.R. at 823 (finding the "plain language" of the statute "applies when the request for relief from stay results in the debtor requesting and obtaining a voluntary dismissal"). These courts find that this approach "reflects both Congressional intent and the most natural and obvious reading of the statute." *In re Sole*, 233 B.R. at 350; *see also In re Duncan*, 182 B.R. at 159 ("Absent a causal relationship, there is no abuse to curb and no purpose to be served by keeping the former debtor out of bankruptcy for 180 days."); *In re Copman*, 161 B.R. at 824 (finding the causal connection approach is "faithful to the plain meaning of the statutory language and its purpose").

<u>This Court's Approach</u>.

As so often stated by the Supreme Court of the United States, the interpretation of a statute must begin "with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985)). "If the statutory language is plain, we must enforce it according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (citing *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 251 (2010)). "[W]hen deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). "The plain meaning of

9

legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair Enters.,* 489 U.S. at 242 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)).

While many courts discuss the "plain language" of Section 109(g)(2), it is evident from the various readings of the statute that "[a]t the very least, the language of the statute is open to interpretation." *In re Sole*, 233 B.R. at 349.  This Court, however, agrees with the court in the *Copman* case that by analyzing the various interpretations, the language of the statute, and the Eighth Circuit precedent, there is an approach that "follows the command of the statute and the dictates of the Eighth Circuit." *In re Copman*, 161 B.R. at 822.

The language of the statute itself requires the debtor to *both* "request[] and obtain[]" the voluntary dismissal "following" the filing of the request for relief from stay, which is consistent with the intent of Congress to alleviate abusive bankruptcy filings aimed at hindering and delaying creditors.  The plain language of the statute links the voluntary dismissal with the filing of the request for relief from stay.

The statute would not apply, for instance, if the debtor filed a motion to voluntarily dismiss his case *prior to* a creditor filing a motion for relief from stay even if the case was voluntarily dismissed after the motion for relief was filed.  As observed by the *Copman* court, the abuse Congress intended to curb was a debtor's repeated attempt to thwart a creditor's foreclosure or repossession of his property when the creditor meets the standards for relief from stay.  *Id.* at 823.  The 180-day bar to refiling allows the creditor sufficient time to complete the foreclosure or repossession process undisturbed by successive abusive bankruptcy filings.  This Court agrees that "requiring that the request for relief *result in* dismissal" is being "faithful to the plain meaning of the statutory language and its purpose." *Id.* at 824 (emphasis added).

The Court also agrees that this reading of the statute is consistent with the Eighth Circuit's *per curiam* opinion in the case of *Bigalk v. Federal Land Bank of St. Paul (In re Bigalk)*, 813 F.2d 189 (8th Cir. 1987). In *Bigalk*, the debtor or his wife previously filed bankruptcy on three separate occasions to stop foreclosure proceedings initiated by the Federal Land Bank. Each case was voluntarily dismissed after the Federal Land Bank had filed a motion for relief from stay to proceed with the foreclosure action. After the filing of the fourth case, which was filed just hours before another scheduled foreclosure sale and within 180 days of the dismissal of the third case, the Federal Land Bank filed an emergency motion to dismiss. The bankruptcy court dismissed the fourth case "as filed in bad faith." *In re Bigalk*, 813 F.2d at 190. The Eighth Circuit affirmed the dismissal, acknowledging that Section 109(g)[5] was enacted to address "abuse of the bankruptcy process" and finding the language of the statute "clear." *Id*.

The Eighth Circuit did not discuss the various interpretations of Section 109(g)(2), but it had no reason to do so as the facts of that case "fell directly within the intended reach of § 109(g)(2)." *In re Richter*, 2010 WL 4272915, at *8 (also stating *Bigalk* "was not a wholesale endorsement of the strict interpretation approach"). This Court agrees with the *Copman* court that the causal connection approach is consistent with this Eighth Circuit opinion; indeed, it is easy to find a causal connection between the Federal Land Bank's efforts to obtain relief from stay to foreclose and the debtor's voluntary dismissal.

The Debtor urges this Court to follow *In re Jones* and adopt the "pending motion approach." In *In re Jones*, the debtor filed a second bankruptcy case within 180 days of voluntarily dismissing a prior case in which she was a joint debtor with her spouse. *In re Jones*, 99 B.R. at 412. A creditor in the first case had filed a motion for relief from stay, but that motion

---

[5] Formerly codified at Section 109(f).

11

had been *denied*. *Id.* The denial of the motion for relief from stay occurred on December 18, 1986, and the debtor and her husband obtained a voluntary dismissal on March 29, 1988, more than fifteen months after the denial of the earlier motion. *Id.* Within 180 days of the voluntary dismissal, the debtor filed a second bankruptcy case individually. *Id.* In the second case, Economy Motors, a creditor that had *not* filed a motion for relief from stay in the earlier case, filed a motion to dismiss, alleging that Section 109(g)(2) prevented the debtor from seeking bankruptcy relief within 180 days of the debtor's prior voluntary dismissal because a motion for relief had been filed in that case. *Id.* at 413.

After reciting the stipulated facts, stating the creditor's argument, and quoting the language of the statute, the *Jones* court disposed of the creditor's motion to dismiss in three sentences: "Economy Motors' argument is without merit. Section 109(g)(2) applies only if there is a contested matter pending at the time of the voluntary dismissal. To construe the statute as argued by Economy Motors would produce absurd results." *Id.* at 413 (citations omitted).

This Court's main concern with the court's approach in the *Jones* case is that it reads into the plain language of the statute the requirement of a "pending" motion where none exists. Had Congress intended for the motion for relief from stay to remain pending, it could have included the requirement in the statutory text.[6]

This Court declines to follow the pending motion approach. Instead, this Court adopts the causal connection approach as applied by the court in *Copman*.[7] The Court finds that the

---

[6] The pending motion approach also invites manipulation by the debtor. *See In re Buck*, 306 B.R. 225, 228–29 (Bankr. E.D. Tenn. 2004) (although motion for voluntary dismissal was signed and served while motion for relief from stay was pending, debtors waited until after order granting relief from stay was entered to *file* the motion for voluntary dismissal).

[7] This approach also avoids unreasonable results of a strict or mandatory interpretation in this district where creditors routinely file motions for relief from stay early in the case after debtors express an intent to surrender the collateral. A debtor's voluntary dismissal of such a case years after a creditor obtains relief from stay and disposes

plain language of Section 109(g)(2) requires a relationship between the filing of the motion for relief from stay and the filing of the motion to voluntarily dismiss, in that the relief from stay request must result in the debtor seeking and obtaining the voluntary dismissal.

In the case before the Court, the evidence revealed that the Debtor filed his First Case just two days before SMC was to sell his property at a foreclosure sale. SMC filed a motion for relief from stay in the First Case and the parties resolved the motion by an agreed order which included certain strict compliance provisions. The Debtor failed to comply with the strict compliance provisions and SMC sought and obtained *ex parte* relief from stay. SMC again pursued foreclosure of the property and the Debtor requested and obtained a voluntary dismissal of his First Case. Three days later, the Debtor filed this Second Case.

The Court finds SMC's motion for relief from stay and subsequent *ex parte* relief from stay resulted in the Debtor both requesting and obtaining the voluntary dismissal. Therefore, under the facts of this case, the Debtor was barred by Section 109(g)(2) from refiling a case under any chapter of the Bankruptcy Code for a period of 180 days. The Second Case was improperly filed and SMC's motion to dismiss is granted on the additional ground that the Debtor was ineligible to be a debtor under Title 11 at the time the Second Case was filed.[8]

## V. Conclusion

For all the foregoing reasons, the Court finds that the plain language of Section 109(g)(2) requires a relationship between the request for relief from stay and the voluntary dismissal. The

---

of its collateral is not a voluntary dismissal "following" the filing of a motion for relief from stay that is intended to trigger the 180-day bar to refiling as an abuse of the bankruptcy process.

[8] The Debtor filed a motion to convert this case to a Chapter 13 case on May 7, 2019. (Doc. No. 27). Although the motion to convert was not set for hearing with SMC's Motion, the Debtor requested the Court to consider his request for conversion. Because the Court has found that the Debtor was barred from filing bankruptcy under any chapter of the Bankruptcy Code pursuant to Section 109(g)(2) for 180 days after dismissal of the First Case, the motion to convert cannot be granted.

13

request for relief from stay must result in the debtor seeking and obtaining the voluntary dismissal. In so finding, the Court rejects the Debtor's argument that the motion for relief had to be pending at the time of the dismissal.[9] Under the facts before the Court, SMC's request for relief from stay resulted in the Debtor requesting and obtaining the voluntary dismissal of his First Case. Accordingly, the Debtor was barred from refiling any case under Title 11 for a period of 180 days following the dismissal. The Debtor's Second Case was improperly filed within the 180-day period.

This Court will follow the cases that hold that "the filing of an intervening, and improperly filed, bankruptcy case tolls the 180-day ban imposed by [S]ection 109(g)." *In re Bowman*, No. 04-42664, 2004 WL 1083256, at *3 (Bankr. W.D. Mo. May 11, 2004); *see also In re Buck*, 306 B.R. 225, 229 (Bankr. E.D. Tenn. 2004). Therefore, the Court finds that SMC's Motion is granted and the Debtor is barred from filing any case under Title 11 for 177 days from the date of entry of this order.

**IT IS SO ORDERED.**

_____
Phyllis M. Jones
United States Bankruptcy Judge
Dated: 09/13/2019


cc:    Mr. Branch T. Fields
       Mr. Oswald C. "Rusty" Sparks
       Ms. Renee Williams
       U.S. Trustee
       All Creditors

---

[9] Under the facts of this case the pending motion approach would allow the very abuse Congress sought to curb.